# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TIMMOTHY SCOTT SCHMIDT, | ) | Case No. 1:20-CV-02251-CEF |
| | ) | |
| Petitioner, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| HAROLD MAY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.  INTRODUCTION

Petitioner, Timmothy Scott Schmidt ("Mr. Schmidt"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Schmidt is serving a sentence of 44.5 years for: (1) two first-degree felony counts of felonious assault on a police officer with a firearm specification in violation of R.C. §§ 2903.11(A)(1) and 2941.1412; and (2) one fourth-degree felony count of resisting arrest with two firearm specifications in violation of R.C. §§ 2921.33(C)(1), 2941.141, and 2941.1412.

Mr. Schmidt asserts a single ground for relief, arguing that he received ineffective assistance of appellate counsel in violation of the Sixth Amendment to the U.S. Constitution. Respondent, Warden James Haviland ("Warden"), filed an answer/return of writ on December 28, 2020. (ECF No. 6). Mr. Schmidt filed a traverse on January 25, 2021. (ECF No. 7).

This matter was referred to me on September 2, 2022, under Local Rule 72.2 to prepare a report and recommendation on Mr. Schmidt' petition. (*See* ECF non-document entry dated September 2, 2022). For the foregoing reasons, I recommend that Mr. Schmidt'

1

petition be DISMISSED and/or DENIED. I further recommend that this Court not grant Mr.

Schmidt a certificate of appealability.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings

of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by

a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio

Court of Appeals for the Eleventh District summarized the facts as follows:

> {¶2} On September 28, 2017, Patrolmen Cory Planisek and Craig Anderson of the Willoughby Hills Police Department were dispatched to a local car dealership due to a report of a disgruntled customer. After arriving at the dealership, the patrolmen learned that appellant was the disgruntled customer. After relaying his name to dispatch, they were preliminarily informed that there were two outstanding warrants for appellant's arrest and that his driver's license was suspended.

> {¶3} The patrolmen did not approach appellant until he paid his bill and stepped into the garage area of the dealership. At that point, the patrolmen stopped him and engaged him in conversation for a few minutes. As the discussion was ending, the patrolmen received confirmation over their portable radios of the arrest warrants. Realizing he was about to be taken into custody, appellant turned and ran toward an exit from the garage.

> {¶4} Appellant was carrying a concealed 9mm Smith & Wesson handgun in the back waistband of his pants. The handgun had a full magazine of eight rounds, with one in the chamber, ready to fire.

> {¶5} The patrolmen quickly began chase, with Patrolman Planisek leading the way. As appellant neared an open bay door, he reached behind his back and grabbed the handgun with his right hand. At approximately the same time appellant was securing his control over the handgun, Patrolman Planisek caught him and tackled him to the ground. Appellant landed on his stomach, with his right arm extended in front of him. Patrolman Planisek landed on appellant's back and attempted to subdue him.

> {¶6} While his arm was extended forward on the ground, appellant fired one shot that went to his left, away from the two officers. As he and Patrolman Planisek continued

2

to struggle, he rolled onto his back and saw Patrolman Anderson, who had run up from behind. Appellant then fired a number of shots, one of which hit Patrolman Anderson. Stunned, Patrolman Anderson momentarily limped away from the struggle and tried to contact dispatch for assistance. He then turned around, unholstered his firearm, and began limping back toward the struggle when appellant shot him a second time. Undeterred, Patrolman Anderson maneuvered himself to a position where he could fire without endangering Patrolman Planisek and shot appellant four times. At that point, appellant threw up his hands in surrender.

{¶7} During the short time span in which Patrolman Anderson attempted to call dispatch, Patrolman Planisek continued his efforts to subdue appellant. After shooting Patrolman Anderson the first time, appellant continued firing and shot Patrolman Planisek twice. Appellant fired all nine rounds during the confrontation.

{¶8} All three men suffered serious physical injuries, but none of the wounds were fatal. Both patrolmen had wounds to their torso and legs requiring hospitalization. In addition to his bullet wounds, Patrolman Planisek's left eardrum was seriously damaged.

(ECF No. 6-2, Exhibit 21); *State v. Schmidt*, No. 2018-L-068, 2019 WL 4774031, 2019-Ohio-3990 (11th Dist. Sept. 30, 2019).

## III. PROCEDURAL HISTORY

### A. **State Court Plea**

On November 9, 2017, Mr. Schmidt was indicted in the Lake County Court of Common Pleas on the following offenses: (1) two first-degree felony counts of attempted murder with a firearm specification in violation of R.C. §§ 2923.02, 2903.02(A), and 2941.1412; (2) four first-degree felony counts of felonious assault with a firearm specification in violation of R.C. §§ 2903.11(A)(1) and 2941.1412; and (3) one fourth-degree felony count of resisting arrest with two firearm specifications in violation of R.C. §§ 2921.33(C)(1), 2941.141, and 2941.1412. (ECF No. 6-2, Exhibit 1).[1]

On November 15, 2017, Mr. Schmidt executed a waiver of his right to be present at

---

[1] The State subsequently amended the indictment twice with leave of court. (ECF No. 6-2, Exhibits 6, 10). Neither amendment added or removed counts or substantively changed the allegations against Mr. Schmidt.

arraignment. (ECF No. 6-2, Exhibit 3). In the waiver, Mr. Schmidt stated that, "I understand the nature of the charges, and I understand the possible penalties if I am convicted of the charges." *Id*. Mr. Schmidt also agreed to "waive [his] right to be present at [his] arraignment in the Common Pleas Court, waive the reading of the indictment, [and] any defects in the time or manner of the service of same . . . ." *Id*. In the waiver, Mr. Schmidt also pled not guilty to all charges. *Id*.

On November 28, 2017, Mr. Schmidt executed a waiver of his speedy trial rights for 180 days, stating that he "waive[d] his rights to a speedy trial under the U.S. and Ohio Constitutions." (ECF No. 6-2, Exhibit 7).

On March 19, 2018, Mr. Schmidt withdrew his plea of not guilty and pled guilty to two counts of felonious assault with a firearm specification (Counts Three and Four) and one count of resisting arrest with two firearm specifications (Count Seven) in return for the State dismissing the remaining charges against him. (ECF No. 6-2, Exhibit 12). In the written guilty plea, Mr. Schmidt made a number of representations, including that: his counsel explained to him the facts and circumstances surrounding his plea; the trial court and his counsel had informed him of the charges against him and the penalties provided by law; he was pleading guilty of his own free will; he was admitting he committed the relevant offenses; and he was not under drugs or alcohol and had not taken any drugs or alcohol in the preceding 48 hours other than his prescription medication, which included Buspar. *Id*.

Mr. Schmidt also represented that he understood that he faced a maximum sentence of 11 years on each of the felonious assault charges plus an additional seven years for each firearm specification; a maximum sentence of 18 months on the resisting arrest charge plus an additional eight years for the two firearm specifications; a $20,000 fine for each felonious

assault charge; and a $5,000 fine for the resisting arrest charge. *Id*. He further represented that he understood that he could face other financial costs, including court costs, restitution, and costs of confinement. *Id*. Mr. Schmidt also expressly represented that he understood he was facing a maximum prison term of 45.5 years and a maximum fine of $45,000. *Id*.

On May 3, 2018, the trial court sentenced Mr. Schmidt to a term of eleven years on each of the two felonious assault charges, plus seven years on the firearm specification for each felonious assault count. (ECF No. 6-2, Exhibit 17). The trial court also sentenced Mr. Schmidt to a term of 18 months on the resisting arrest charge, plus an additional seven years on the firearm specification for that count. *Id*. The trial court found that none of the counts should merge, and ordered that Mr. Schmidt would serve each sentence consecutively to each other and to the firearm specifications, for a total sentence of 44.5 years. *Id*. The trial court also ordered Mr. Schmidt to pay a fine of $10,000, plus court costs and the cost of prosecution. *Id*.

### B.  <u>Direct Appeal</u>

On June 1, 2018, Mr. Schmidt, through counsel, timely filed a notice of appeal to the Eleventh District Court of Appeals. (ECF No. 6-2, Exhibit 18). In his appellate brief, Mr. Schmidt raised the following two assignments of error:

1. The trial court erred to the prejudice of the defendant-appellant when it failed to merge his conviction for resisting arrest and its accompanying seven-year firearm specification with his felonious assault convictions, in violation of his rights against double jeopardy under the Fifth and Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

2. The trial court erred by sentencing the defendant-appellant to consecutive, maxumum [sic] prison sentences totaling 44 ½ years.

(ECF No. 6-2, Exhibit 19).

On September 30, 2019, the Eleventh Appellate District affirmed Mr. Schmidt's

sentence, holding that the trial court did not err in declining to merge Mr. Schmidt's sentences or in imposing a 44.5 year sentence on Mr. Schmidt. (ECF No. 6-2, Exhibit 21).

On November 14, 2019, Mr. Schmidt, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 5-2, Exhibit 22). In his memorandum in support of jurisdiction, Mr. Schmidt raised the following two propositions of law:

1. It is a due process violation and a violation of a defendant's constitutional right to not be subjected to double jeopardy where he is sentenced to multiple sentences for the same offense.

2. A defendant's constitutional right to due process is violated where he receives maximum sentences based upon non-statutory sentencing factors.

(ECF No. 6-2, Exhibit 23). On January 1, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 6-2, Exhibit 25).

## C.  **Rule 26(B) Application to Reopen Appeal**

On December 24, 2019, Mr. Schmidt, proceeding *pro se*, timely filed an application in the Eleventh Appellate District to reopen his appeal pursuant to Ohio Appellate Rule 26(B), arguing that he had been deprived the effective assistance of appellate counsel on his direct appeal. (ECF No. 6-2, Exhibit 26). Mr. Schmidt argued that his appellate counsel was ineffective in failing to raise the following assignments of error:

1. The trial court failed to consider Defendant's ability to pay the fines assessed in this matter.

2. The trial court failed to consider Defendant's ability to pay the court costs in this matter.

3. The trial court failed to find that Defendant's waiver of arraignment on November 17, 2019 was knowingly, intelligently and voluntarily entered.

4. The indictment in this matter violated Defendant's constitutional right to due process because the indictment failed to include the facts that support the elements of the offenses charged.

5.  Defendant's state and federal constitutional rights to be brought to trial within ninety (90) days from arrest was violated even with the time restricted waiver.

6.  Defendant's pleas of guilty in this matter were not entered knowingly, intelligently and voluntarily because defendant was under the influence of Buspar and Zyprexa which are psychotropic drugs that affect chemicals in the brain.

7.  Defendant's pleas of guilty were not knowingly, intelligently and voluntarily entered in this matter because the trial court failed to have a colloquy on the record with Defendant to demonstrate that he understood what rights he was waiving when waiving the right to a trial by jury in direct violation of Crim. R. 11 (C)(2)(C).

*Id*.

On March 5, 2020, the Eleventh Appellate District denied Mr. Schmidt's Rule 26(B) application to reopen. (ECF No. 6-2, Exhibit 28). The Eleventh Appellate District first held that, while Mr. Schmidt set forth seven proposed assignments of error that his appellate counsel failed to raise, he did not "provide any arguments or legal analyses in support of the assignments." *Id*. The Eleventh Appellate District also held that Mr. Schmidt's affidavit in support of his application "consists of conclusory statements that appellate counsel's performance fell below the objective standard of reasonableness adversely changing the outcome." *Id*. Finally, the Eleventh Appellate District held that, because Mr. Schmidt did not make any supporting arguments, he failed to carry his burden under Ohio Rule of Appellate Procedure 26(B)(5) to demonstrate a genuine issue regarding the denial of effective assistance of counsel. *Id*.

On July 24, 2020, Mr. Schmidt, now represented by counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 6-2, Exhibit 29). Mr. Schmidt also filed a motion for leave to file his appeal out of time in light of the COVID-19 pandemic (ECF No. 6-2, Exhibit 30), which the Ohio Supreme Court granted on August 5, 2020 (ECF No. 31). In his memorandum in support of jurisdiction, Mr. Schmidt raised the following proposition of law:

1. The Lake County Court of Appeals erred in denying defendant-appellant's application for reopening pursuant to Ohio R.App.P. 26(B).

(ECF No. 6-2, Exhibit 32).

On September 15, 2020, the Ohio Supreme Court declined to accept jurisdiction of

Mr. Schmidt's appeal. (ECF No. 6-2, Exhibit 33).

**D.  Federal Habeas Action**

On October 6, 2020, Mr. Schmidt, through counsel, filed his 28 U.S.C. § 2254 habeas

petition. (ECF No. 1). Mr. Schmidt's habeas petition raises one ground for relief:

1. Ineffective assistance of appellate counsel

**Supporting Facts**: Appellate counsel failed to raise multiple issues arising from Defendant-Appellant's change of plea and sentencing hearings, specifically, that the Trial Court did not consider Defendant-Appellant's ability to pay fines and costs, that Defendant-Appellant's waiver of arraignment was not done knowingly and voluntarily, the underlying indictment was defective because it did not allege facts to support each element of the offenses charged, Defendant's right to a speedy trial was violated, Defendant's guilty pleas were not entered knowingly and voluntarily because Defendant was under influence of state administered psychotropic drugs, and Trial Court failed to have required colloquy.

*Id*. at PageID #5. The Warden filed an answer/return of writ on December 28, 2020. (ECF

No. 6). Mr. Schmidt filed a  traverse on January 26, 2021. (ECF No. 7).

**IV. STANDARDS OF REVIEW AND GOVERNING LAW**

**A.  Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of

habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court

only on the ground that he is in custody in violation of the Constitution or laws or treaties of

the United States." A state prisoner may file a § 2254 petition in the "district court for the

district wherein such person is in custody or in the district court for the district within which

the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The

8

Lake County Court of Common Pleas sentenced Mr. Schmidt, and the Court takes judicial notice that Lake County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Schmidt's § 2254 petition.

**B. Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment.

*Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. __Cognizable Federal Claim__

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. __AEDPA Standard of Review__

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

Mr. Schmidt asserts that habeas relief is warranted because he was denied his right to effective assistance of appellate counsel. The Warden responds that: (1) Mr. Schmidt has procedurally defaulted on his claim; and (2) Mr. Schmidt's claim fails on the merits. As set forth below, the Warden's arguments are well-taken.

### A.  **Procedural Default**

The Warden first argues that Mr. Schmidt procedurally defaulted on his ineffective assistance of counsel claim because the Eleventh Appellate District denied Mr. Schmidt's application for failure to comply with the procedural rules governing such applications.

Ohio has a "dual-track system" for ineffective assistance of counsel claims. *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016); *see also McGuire v. Warden*, *Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013). Under this dual-track system, grounds for relief that are based on evidence wholly within the trial record must be brought on direct appeal, while claims based on evidence outside the trial record cannot be brought on direct review and must be raised in a petition for state post-conviction relief. *McGuire*, 738 F.3d at 751 (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)).

Mr. Schmidt asserted his ineffective assistance of appellate counsel claim in a post-conviction petition under Ohio App. R. 26(B). However, the Warden argues that the Eleventh Appellate District never reached the merits of Mr. Schmidt's petition because it applied a procedural bar. In particular, the Warden argues that the Eleventh Appellate District denied Mr. Schmidt's application because he failed to comply with Ohio App. R. 26(B)(2)(d), which provides that an application for reopening must include:

A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially

14

affected the outcome of the appeal, which may include citations to applicable authorities and references to the record.

Ohio App. R. 26(B)(2)(d).

The Warden is correct. The Eleventh Appellate District held that Mr. Schmidt's application failed because his supporting affidavit "consists of conclusory statements that appellate counsel's performance fell below the objective standard of reasonableness adversely changing the outcome." (ECF No. 6-2, Exhibit 28). In reaching its holding, the Eleventh Appellate District cited to *State v. Sanders*, No. 76620, 2004 WL 2914997, 2004-Ohio-6846 (Ohio App. Ct. Dec. 14, 2004), in which the court held that an affidavit containing only conclusory averments does not comply with Rule 26(B)(2)(d) and provides a sufficient basis for denying the application. I therefore agree with the Warden that the Eleventh Appellate District denied Mr. Schmidt's application because he failed to comply with Rule 26(B)(2)(d).

I also agree with the Warden that the Eleventh Appellate District's application of Rule 26(B)(2)(d) constitutes a procedural bar that precludes federal habeas review. It is well-settled that "a petitioner's failure to adhere to the requirements of Ohio App. R. 26(B)(2)(d) and the state appellate courts' enforcement of the said requirements constitutes a procedural default foreclosing federal habeas review." *Jackson v. Sloan*, No. 1:17-CV-01081, 2019 WL 2234597, at *8 (N.D. Ohio Apr. 24, 2019), *report and recommendation adopted*, 2019 WL 2233881; *see also Clark v. Buchanan*, No. 1:17-cv-2078, 2020 WL 7021353, at *3 (N.D. Ohio Nov. 30, 2020) ("The appellate court's alternate rejection of Clark's petition for collateral review due to his failure to comply with Appellate Rule 26(B)(2)(d) forecloses federal habeas review"); *Fox v. Warden, Belmont Corr. Inst.*, No. 2:19-CV-00901, 2020 WL 127647, at *12 (S.D. Ohio Jan. 10, 2020), *report and recommendation adopted*, 2019 WL

5695853 ("Time and again, District Courts have held that a petitioner's failure to comply with Rule 26(B)(2)(d) results in procedural default of a claim.") (citing cases). Mr. Schmidt has thus procedurally defaulted on his claim.

Mr. Schmidt's procedural default may be excused if he demonstrates both cause for the default and resulting prejudice or that he is actually innocent of the offense charged. *See Coleman*, 501 U.S. at 750. However, Mr. Schmidt does not make any argument in his traverse as to why his procedural default should be excused. Instead, he argues only that no procedural default has occurred in the first place. I disagree for the reasons set forth above, and therefore recommend that the Court DISMISS Mr. Schmidt's claim because he has procedurally defaulted on it.

### B.  Merits

Alternatively, I recommend that the Court deny Mr. Schmidt's habeas petition on the merits, as Mr. Schmidt has not met his burden of establishing that the Eleventh Appellate District acted contrary to or unreasonably applied clearly established federal law in rejecting Mr. Schmidt's ineffective assistance of appellate counsel claim.

The right to effective assistance of counsel extends through the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's

16

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id*. (quoting *Strickland*, 466 U.S. at 687).

Notably, it is well-settled that "the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Indeed, "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Thus, to show that appellate counsel was ineffective in raising one argument over another, "the petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did not present." *Caver*, at 348.

Mr. Schmidt argues that his appellate counsel was ineffective in failing to raise six separate arguments on appeal: (1) the trial court did not consider Mr. Schmidt's ability to pay fines and costs; (2) Mr. Schmidt did not knowingly and voluntarily waive his arraignment;

17

(3) the indictment was defective because it did not allege facts to support each element of the charged offenses; (4) Mr. Schmidt's right to a speedy trial was violated; (4) Mr. Schmidt did not enter his guilty plea knowingly and voluntarily because he was under the influence of state-administered psychotropic drugs; and (6) the trial court failed to hold a plea colloquy as required by Ohio Crim. R. 11(C)(2). The Warden responds that Mr. Schmidt's appellate counsel was not ineffective in failing to raise those arguments because Mr. Schmidt waived his speedy trial, defective indictment, and waiver of arraignment arguments by entering into an unconditional guilty plea, and because the transcript of his plea hearing demonstrates that his plea was knowing and voluntary. The Warden's arguments are well-taken.

### 1. Arguments Regarding Alleged Pre-Plea Constitutional Violations

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction." *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (internal quotations omitted). This is so because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Therefore, "after the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012).

In light of *Tollett*, the Warden is correct that Mr. Schmidt's claims relating to his speedy trial rights, the indictment, and his arraignment relate to alleged deprivations of his constitutional rights that occurred prior to the entry of his plea and were therefore waived through his unconditional guilty plea. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (holding that "the right to a speedy trial is not a jurisdictional issue" and is waived by

18

unconditional guilty plea); *Flowers v. United States*, 208 F.3d 213, at \*5 (6th Cir. 2000) (Table) (holding that petitioner waived right to challenge constitutionality of indictment by pleading guilty); *Lana v. Coleman*, No. 3:11 CV 1178, 2014 WL 849179, at \*16 (N.D. Ohio Mar. 4, 2014) (same); *Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at \*2 (6th Cir. July 15, 2016) (holding that reasonable jurists would not debate that petitioner waived right to challenge arraignment procedures by entering guilty plea); *Moore v. Woods*, No. 16-11047, 2016 WL 2851430, at \*2 (E.D. Mich. May 16, 2016) (holding that petitioner waived challenge to arraignment procedures by pleading guilty).

Because Mr. Schmidt waived his arguments regarding alleged pre-plea constitutional violations, his appellate counsel did not perform below an objective standard of reasonableness in failing to raise those arguments on appeal. *See Littlepage v. Shoop*, No. 20-3890, 2020 WL 8618193, at \*2 (6th Cir. Nov. 19, 2020) ("While [petitioner] argues that his appellate counsel was ineffective for failing to raise numerous issues, his guilty plea waived these various challenges, and appellate counsel is not ineffective for failing to raise meritless arguments.") I therefore recommend that the Court deny Mr. Schmidt's claim that the with respect to his speedy trial, arraignment, and indictment arguments.

### 2. Arguments Regarding the Voluntariness of Mr. Schmidt's Guilty Plea

Mr. Schmidt also argues that his appellate counsel was ineffective in failing to argue that Mr. Schmidt's guilty plea was not knowing and voluntary on several grounds. The Warden does not argue that Mr. Schmidt waived these arguments through his guilty plea, and I agree that he did not. I agree with the Warden, however, that Mr. Schmidt's counsel was not ineffective in failing to raise arguments regarding the voluntariness of his plea because the transcript of the plea hearing shows that those arguments are without merit.

"[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done

with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The validity of the plea must be determined from the "totality of the circumstances." *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. at 747, 749). When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding," *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent. *Id*. at 326-327; *see* U.S.C. § 2254 (e)(1).

Mr. Schmidt first argues that his appellate counsel should have challenged the voluntariness of the plea because the trial court did not consider his ability to pay fines and court costs. However, the trial court expressly raised the issue of court costs and fines with Mr. Schmidt at the plea hearing, and Mr. Schmidt did not express any concerns about his ability to pay those costs and fines:

> JUDGE LUCCI : You understand I can make the sentences consecutive with one another for a total of forty-five years and six months in prison, and total fines of up to forty- five thousand dollars?
>
> TIMMOTHY SCHMIDT: Yes, Your Honor.
>
> (ECF No. 6-3, 19:7-11).
>
> JUDGE LUCCI : In addition to the fines that I mentioned, do you understand that I will order you to reimburse the government the cost of confinement, any supervision, any treatment, and court costs?
>
> TIMMOTHY SCHMIDT: Yes, Your Honor.
>
> JUDGE LUCCI: You understand the cost of confinement includes the transportation costs between the court, the jail, and the prison?

TIMMOTHY SCHMIDT : Yes.

JUDGE LUCCI: Do you understand I will enter a judgment against you for the costs of prosecution?

TIMMOTHY SCHMIDT: Yes.

(ECF No. 6-3, 23:14-24:2).

At no point during that exchange did Mr. Schmidt indicate that he was unable to pay those fines and court costs or that he no longer wished to plead guilty in light of them. Because the trial court expressly addressed the issue of fines and court costs with Mr. Schmidt, his appellate counsel was not ineffective in failing to challenge the voluntariness of his guilty plea on that basis.

Mr. Schmidt next argues that his appellate counsel should have challenged whether his guilty plea was voluntary given the trial court's alleged failure to comply with Ohio Crim. R. 11(C)(2). That rule requires the trial court to: (1) ensure that the defendant is making the plea knowingly and voluntarily, with full understanding of the nature of the charges and the maximum penalty involved; (2) inform the defendant of the effect of the plea and that, upon acceptance of the plea, the court may proceed to judgment and sentencing; and (3) inform the defendant of the rights he is waiving by pleading guilty.

As the Warden correctly notes, the trial court engaged in an extended colloquy with Mr. Schmidt regarding the matters governed by Ohio Crim. R. 11(C)(2). Mr. Schmidt does not explain what portion of Ohio Crim. R. 11(C)(2) he believes the trial court failed to comply with, and the transcript of the plea hearing shows that the trial court properly addressed all three issues. (*See* ECF No. 6-3, 6:2-19; 7:18-16:9). I therefore conclude that Mr. Schmidt's appellate counsel was not ineffective in failing to raise an argument that the plea colloquy violated Ohio Crim R. 11(C)(2).

Finally, Mr. Schmidt argues that his appellate counsel should have challenged the voluntariness of his plea because he was under the influence of state-administered psychotropic medication at the time he entered into the plea. Again, however, the trial court expressly asked Mr. Schmidt whether he was on any medication that would prevent him from knowingly and voluntarily entering into the plea:

> JUDGE LUCCI : Are you currently under the influence of any drugs, alcohol, or medication of any kind?
>
> TIMMOTHY SCHMIDT: No, Your Honor.
>
> JUDGE LUCCI: Have you taken any drugs, alcohol, or medication of any kind within the last forty-eight hours?
>
> TIMMOTHY SCHMIDT: No.
>
> JUDGE LUCCI: Have you ever been medicated, hospitalized, or treated for any mental illness in your life?
>
> TIMMOTHY SCHMIDT: No.

(ECF No. 6-3, 5:9-20).

After Mr. Schmidt's lawyer mentioned that Mr. Schmidt was taking psychotropic medication in the county jail, the trial judge engaged in the following additional exchange with Mr. Schmidt:

> JUDGE LUCCI: So what medication, Mr. Schmidt, have you had within the last forty-eight hours?
>
> TIMMOTHY SCHMIDT: One's called Buspar, the other one's called Zyprexa.
>
> JUDGE LUCCI: Alright. And what conditions do those treat?
>
> TIMMOTHY SCHMIDT: I'm honestly not sure.
>
> JUDGE LUCCI: What - -
>
> TIMMOTHY SCHMIDT: I'm honestly not sure.
>
> JUDGE LUCCI: Okay. What do those medications do for you?

TIMMOTHY SCHMIDT: Not really much of anything.

JUDGE LUCCI: Alright. Do they interfere with your ability to think clearly?

TIMMOTHY SCHMIDT: No, they don't cloud my judgment.

JUDGE LUCCI: Alright. So you're thinking clearly now?

TIMMOTHY SCHMIDT: Yes, Your honor.

JUDGE LUCCI: You've understood everything I've said so far?

TIMMOTHY SCHMIDT: Yes, Your honor.

JUDGE LUCCI: And you've understood everything you and your attorney talked about this morning?

TIMMOTHY SCHMIDT: Yes.

(ECF No. 6-3, 28:23-30:2).

Courts have repeatedly rejected challenges to the voluntariness of a guilty plea where the trial court inquired into the effect of any medication, and the defendant informed the court that any medication the defendant was taking did not impair the defendant's ability to enter into a knowing and voluntary plea. *See United States v. Sawasky*, 578 F. App'x 475, 479 (6th Cir. 2014) (rejecting argument that defendant's anti-depression medication prevented her from making knowing and voluntary plea where defendant denied taking any drugs or alcohol that would affect her ability to understand proceedings); *United States v. Shearer*, 301 F. App'x 450, 452-53 (6th Cir. 2008) (holding that district court did not err in accepting defendant's plea where district court specifically asked defendant whether medication affected his ability to think clearly and defendant affirmed he was competent to make plea); *Perry v. Tibbles*, No. 5:12 CV 802, 2013 WL 4680483, at *6 (N.D. Ohio Aug. 30, 2013) (holding that state court did not err in rejecting petitioner's challenge to voluntariness of plea where transcript of plea hearing refuted petitioner's assertion that prescription medication prevented him from making a knowing, voluntary, and intelligent plea).

23

Here, the trial court specifically asked Mr. Schmidt whether he was taking any medication that would impact his ability to enter into the plea, and Mr. Schmidt stated that his medication did not cloud his judgment. As a result, Mr. Schmidt's appellate counsel did not perform below an objective standard of reasonableness in failing to raise the argument on appeal, and there is not a reasonable probability that the outcome of the appeal would have been different had Mr. Schmidt's counsel done so.

In sum, Mr. Schmidt has not shown that any of the arguments he believes his appellate counsel should have advanced were clearly stronger than the arguments his appellate counsel did advance and also has not shown a reasonable probability that his appeal would have had a different outcome if his appellate counsel had raised those arguments. Mr. Schmidt thus has not shown that the State courts acted contrary to clearly established federal law in adjudicating his ineffective assistance of appellate counsel claim, and I alternatively recommend that the Court DENY Mr. Schmidt's petition on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires

the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  Analysis**

Mr. Schmidt has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Schmidt's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  August 16, 2023

<u>*s/Jennifer Dowdell Armstrong*</u>
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).